MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

KAREN JACOBS LOUDEN
(302) 351-9227
(302) 425-4681 FAX
klouden@mnat.com

January 7, 2013

The Honorable Sue L. Robinson      *VIA ELECTRONIC FILING*
United States District Court
844 N. King Street
Wilmington, DE 19801

    Re:    *CyberFone Systems Litigations,* C. A. Nos. 11-827; 11-830; 11-833 -11-835(SLR)

Dear Judge Robinson:

Defendants request early construction of four related claim terms that capture the core invention claimed in each of the asserted patents[1] and, based on the proposed constructions for these terms, permission to file a motion for summary judgment of noninfringement that will resolve almost all of the cases without further dispute or discovery. The asserted claims require a system that operates using simple firmware algorithms and forms ***instead of*** an operating system that runs application programs. The inventor made clear his invention is restricted to this type of device (*i.e.*, one that operates without an operating system that runs application programs) to meet his objective of providing a "simple and inexpensive" device that would "provide a wide range of functionality without requiring a local operating system program and a plurality of application programs for implementing each function." '676, 2:10-20. The inventor repeatedly cited this essential feature when distinguishing his claimed invention from the prior art and captured this essential feature in the claims using four closely related terms: "form driven operating system," "transaction assembly server (TAS)," "client module," and "computer code for generating a data transaction." If the Court agrees that these four related terms require this essential feature, a finding of noninfringement follows as a matter of law and without any factual disputes, because—as demonstrated by Plaintiff's own infringement contentions—each accused product has an operating system that runs application programs (or no operating system). Granting Defendants' motion will eliminate entirely three of the four asserted patents and all but one claim of the fourth asserted patent. All that would remain is one independent claim of the '024 patent being asserted against only a few Defendants.

I.    **SUBJECT MATTER OF THE ASSERTED PATENTS**

The patents are directed to a data transaction entry device to permit users to input data into forms. *See, e.g.*, '676, 1:7-17 and 2:43-55. The device may be used, for example, to enter data into a patient's medical records, to initiate off-line banking transactions, or to facilitate other form-driven data transactions. *See, e.g.*, '676, 22:16-24:26. The invention was designed to meet the need for a "simple and inexpensive" device that would "provide a wide range of functionality

---

[1] U.S.P. Nos. 5,805,676 ('676 patent), 5,987,103 ('103 patent), 6,044,382 ('382 patent), and 7,334,024 ('024 patent) (collectively, the "asserted patents"). The four patents are related and for purposes of this submission have the same disclosure. Defendants therefore cite to the disclosure of the '676 patent (copy attached at Exhibit 1).

The Honorable Sue L. Robinson
January 7, 2013
Page 2

without requiring a local operating system program and a plurality of application programs for implementing each function." '676, 2:10-20. Instead of an operating system and applications, the invention processed data transactions using a microprocessor controlled by simple firmware (aka microcode) algorithms stored in a memory called a "TAS PROM"[2] and menus and data entry forms stored in a form/menu memory.[3] '676, 13:38 – 14:17. "[S]ince the data transactions are created without the use of an operating system or application programs, the transaction entry device is quite simple and inexpensive and may be readily integrated into the customer's desktop telephone." '676, 2:38-41. To get the patents issued, the inventor repeatedly told the Patent Office that the key to his invention was the elimination of an operating system and application programs: "In particular, the data transaction entry device of the invention has minimal local data storage and does not require the downloading of an application program or local storage of operating system software." (Ex. 2, '676 History, 1/3/1997 Resp. at 14; Ex. 3, '676 History, 3/13/1997 Resp. at 21; Ex. 4, '103 History, 2/18/1998 Am. at 22).

In these cases, Plaintiff asserts its patents against a variety of consumer devices, including smartphones (-827), IP-phones (-830), home-entertainment systems (-833), and video-game consoles and hand-held courier devices (-834). Each accused device has an operating system that runs application programs (or no operating system at all).[4] The architecture of the form driven operating system is the antithesis of, and was intended to replace, the types of architectures used in these present-day devices.

## II.   THE PROPOSED TERMS FOR CLAIM CONSTRUCTION

Plaintiff asserts infringement of independent claims 1 of the '676 patent, 1 and 18 of the '103 patent, and 1 and 19 of the '382 patent, all of which recite "a form driven operating system which controls said microprocessor." Plaintiff also asserts infringement of independent claim 16 of the '676 patent which recites "a transaction assembly server (TAS)" to control a process implemented by said microprocessor. The terms "form driven operating system" and "transaction assembly server" or "TAS" are terms coined by the inventor; they have no ordinary or customary meaning. The claim language, the specification, and the prosecution history provide the only descriptions of what these terms mean in the context of the patents. "Where a claim term has no ordinary and customary meaning, a court must resort to the remaining intrinsic evidence—the written description and the prosecution history—to obtain the meaning of that term." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004).

### A.   Form Driven Operating System

In view of the unambiguous intrinsic evidence, the term "form driven operating system" should be construed as:

---

[2] "TAS" is an acronym for "transaction assembly (or application) server." *See, e.g.*, '676, 2:53-54; 4:1; 5:17-18; 6:10-11; 16:11-12; claim 4, 25:36-37; claim 27, 27:13-14. "PROM" is an acronym for "Programmable Read Only Memory" for storing information. The TAS PROM stores the firmware (aka microcode). *See, e.g.*, '676, 7:43-44 ("The TAS firmware of the invention stores the options as well as control programs (microcode) for the processor"); '676, 13:65-66 ("TAS PROM 95 contains control data (firmware) for the microprocessor 94").

[3] "The menus are treated as a special type of form." '676, 10:63-64. "[T]he words 'form' and 'template' will be used interchangeably." '676, 5:55-57.

[4] Two Defendants have accused products that do not have any operating system, as confirmed by Plaintiff's infringement contentions which fail to identify any operating system.

The Honorable Sue L. Robinson
January 7, 2013
Page 3

Firmware together with forms that serve as the sole code for controlling a microprocessor, instead of an operating system that runs application programs.

The construction is first dictated by the intrinsic evidence. Each time the body of the patent specification uses the term "form driven operating system," it specifically defines the term as the "microcode" (aka "simple firmware algorithms") ('676, 13:41) in the TAS PROM and the "parameter streams from the form/menu memory" (*i.e.*, the forms stored therein) that "operate together" "for all applications" as "the sole code used to control the microprocessor" in place of a "conventional operating system" and "applications programs":

> "The microcode of the TAS PROM 95 and the parameter streams from the form/menu memory 96 thus operate together as a simple **form driven operating system** for microprocessor 94 for all applications and is the sole code used to control microprocessor 94 (i.e., no conventional operating system or application programs are provided)." ('676, 13:50-56) (emphasis added).

> "As noted above, the transaction assembly (application) server (TAS) is a data stream stored in TAS PROM 95 which together with the forms from form/menu memory 96 create a simple **form driven operating system** which provides the necessary control data (firmware) to microprocessor 94 so that no conventional operating system is necessary." ('676, 16:11-16) (emphasis added).

According to the patent specification, eliminating an operating system and application programs made sense in 1995: "Unfortunately, such application programs require substantial amounts of local memory and substantial processing power for performing the desired functions." '676, 2:1-3. Thus, the TAS PROM provided only 1 megabyte (MB) of space for the firmware and form/menu memory. '676, 12:62-67. Today, due to technological advances making memory more available and inexpensive, products like the accused smartphones use gigabytes (GB) of memory—thousands of times more than the TAS PROM—to store many application programs.

The prosecution history also compels this construction. The inventor responded to prior art rejections by adding a "form driven operating system" limitation to the independent claims. He then argued repeatedly that the form driven operating system, as defined in the specification and as construed above, distinguished his invention from the prior art because:

> "The microcode of the TAS PROM 95 and the parameter streams from the form/menu memory 96 instead operate together as a simple **form driven operating system** for microprocessor 94 for all applications and is the sole code used to control microprocessor 94." (Ex. 2, '676 History, 1/3/1997 Resp. at 16; Ex. 3, '676 History, 3/13/1997 Resp. at 22; Ex. 4, '103 File , 2/18/1998 Am. at 24.) (emphasis added).

> "In view of this position taken by the Examiners during the interview, Applicant's undersigned representative agreed to reconsider the claims in view of the cited prior art and to consider amending the claim language to specify that the invention uses a simple **form driven operating system** in place of the conventional operating system and application programs, thereby eliminating much of the overhead and hardware requirements conventionally required in prior art data transaction terminals. The present Supplemental Amendment is being submitted to amend the claims." (Ex. 3, '676 History, 3/13/1997 Resp. at 18-19.) (emphasis added).

The Honorable Sue L. Robinson
January 7, 2013
Page 4

The inventor repeatedly asserted in the patent and prosecution history that the form driven operating system **replaces** an operating system and application programs:

- "[T]he TAS firmware from TAS PROM 95 and menus and forms from form/menu memory 96 of the invention together **replace a conventional operating system and individual application programs**." ('676, 14:13-16; '382, 17:24-27) (emphasis added).

- The objective of the invention is "**[e]limination of the requirement of a conventional operating system and the associated application programs**" which "to date … has not been possible because the operating system is needed to run the application programs …" ('676, 1:61-2:1) (emphasis added).

- Throughout the prosecution history of the asserted patents, the inventor repeatedly argued that the prior art references relied upon to reject the claims were deficient because they failed to disclose or teach a system which uses "templates" (aka forms) and a "form driven operating system" "instead of conventional application programs running on a standard operating system." (Ex. 2, '676 History, 1/3/1997, Resp. at 21, 26-27; Ex. 3, '676 History, 3/13/1997 Resp. at 33; Ex. 4, '103 History, 2/18/1998 Am. at 32-33, 35.).

Such repeated statements compel the construction Defendants seek. More importantly, they preclude subsidiary disputes because Plaintiff accuses the same excluded operating systems and applications of infringing its patents.

### B.    Transaction Assembly Server (TAS)

Claim 16 of the '676 patent uses the term "transaction assembly server (TAS)" instead of "form driven operating system." The "transaction assembly server (TAS)" is the firmware/microcode component of the "form driven operating system." *See, e.g.*, '676, 16:11-16 ("[T]he transaction assembly (application) server (TAS) is a data stream stored in TAS PROM 95 which together with the forms from form/menu memory 96 create a simple **form driven operating system** which provides the necessary control data (firmware) to microprocessor 94 so that no conventional operating system is necessary.") (emphasis added); '676, 6:43-45 ("The *TAS firmware of the invention* stores the options as well as control programs (microcode) for the processor for use with the templates in creating the data transactions.") (emphasis added). That is, the TAS is the firmware/microcode that together with forms serves as the sole code for controlling a microprocessor, instead of an operating system that runs application programs. Thus, the simplest and most proper construction of the term "transaction assembly server (TAS)" is: "The firmware component of a form driven operating system."

### III.   THE '024 PATENT

Plaintiff has accused only a few Defendants (Apple in -827 and remaining Defendants in -830) of infringing independent claims 1, 12, 16 and 28 of the '024 patent. Although these claims do not recite the terms "form driven operating system" or "transaction assembly server," three of the claims – claims 1, 12 and 28 – recite corresponding elements that similarly limit the scope of these claims to cover the identical essential features discussed above. Independent claims 1 and 28 recite a "client module" – a term that appears nowhere in the specification for the '024 patent or any of the other asserted patents. But the claims of the '024 patent make clear that the "client module" is executed by a processor to generate a data transaction, *see* '024, 24:66-67, 27:38-39, a role that corresponds to the role performed by the form driven operating system. Indeed, the form driven operating system is the only component described in the intrinsic

record that has similar features or performs similar functions that might provide a person of ordinary skill in the art with an understanding of the meaning and scope of the term "client module." *See id.*, 13:62-14:29; 16:2-29. Thus, the term "client module," which is recited only in the '024 patent, should be construed the same as "form driven operating system." Similarly, the phrase "computer code for generating a data transaction," as recited in claim 12 of the '024 patent, describes the firmware/microcode that, when executed, generates a data transaction. *See id.*, 26:19-20. Because the specification ties the TAS firmware—and *only* the TAS firmware—to this function, the term "computer code for generating a data transaction" should be construed as synonymous with "transaction assembly server (TAS)."

### IV.    SUMMARY JUDGMENT IS APPROPRIATE

It is undisputed that each accused product has an operating system that runs application programs or has no operating system at all. For example, in the -827 case, the accused products are smartphones that include a variety of operating systems (*e.g.*, Android, Apple iOS, etc.) that run hundreds of applications programs ("apps"). Indeed, Plaintiff identified these operating systems and application programs in its infringement contentions.

If the Court adopts Defendants' constructions, summary judgment of noninfringement should be granted. No accused product includes a form driven operating system, or TAS, because no accused product has "firmware together with forms that serve as the sole code for controlling a microprocessor, instead of an operating system that runs application programs." Instead, the operating systems in all the accused products that have an operating system run application programs. Moreover, Plaintiff cannot avoid summary judgment by isolating something within an accused product which Plaintiff contends is firmware with forms for controlling a microprocessor because that something would not be "the sole code for controlling a microprocessor" and any operating system of the products still "runs application programs." Nor can Plaintiff argue that the accused products do not utilize "conventional" or "standard" operating systems, as Plaintiff suggested it might try to do at the December 10, 2012 conference. The inventor repeatedly defined his invention—both in the patent specification and during prosecution in the Patent Office—as one that did not include an operating system that ran applications. The patent claims, as properly construed, cannot cover the accused products.

### V.    NEED FOR EXPEDITED PROCEEDINGS

Defendants respectfully submit that their proposed motion is appropriate and timely. The parties have exchanged their disclosures under the District of Delaware default standard, and Plaintiff's infringement contentions confirm that it is improperly relying on application programs to allege infringement. No further discovery is needed to decide the motion. Moreover, a noninfringement decision at this stage would provide enormous party and judicial economies. There are still five separate cases involving four patents asserted against hundreds of products of over 40 Defendants. Coordinating among so many Defendants, who are competitors of one another with different products, has been and continues to be a daunting task. Defendants should not be required to engage in (and the Court should not be required to preside over) full-blown discovery and defend against baseless infringement claims, when these claims can be resolved by a proper construction of a limited number of related claim terms. Defendants request that briefing proceed on a condensed schedule with three rounds of briefing, as proposed in their December 7, 2012 letter (D.I. 323).

The Honorable Sue L. Robinson
January 7, 2013
Page 6

                                        Respectfully submitted,

                                        */s/ Karen Jacobs Louden*

                                        Karen Jacobs Louden (#2881)[5]

KJL/dlw

Enclosures

6927277

---

[5] The defendants joining in this letter are listed on the following pages together with the electronic signature of the counsel who approved the filing of the letter on their behalf.

| Counsel for the 11-827 Defendants ||
|---|---|
| Apple Inc. | */s/ Richard L. Horwitz* (#2246)<br>POTTER, ANDERSON & CORROON LLP<br>rhorwitz@potteranderson.com |
| AT&T Mobility LLC | */s/ John G. Day* (#2403)<br>ASHBY & GEDDES<br>jday@ashby-geddes.com |
| Boost Mobile LLC | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Cellco Partnership (d/b/a Verizon Wireless) | */s/ Benjamin J. Schladweiler* (#4601)<br>SEITZ ROSS ARONSTAM & MORITZ LLP<br>bschladweiler@seitzross.com |
| Cricket Communications Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Hewlett-Packard Company | */s/ Rex A. Donnelly, IV* (#3492)<br>RATNERPRESTIA<br>radonnelly@ratnerprestia.com |
| HTC America Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| MetroPCS Wireless Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Nokia Inc. | */s/ Elizabeth Rui He* (#5345)<br>RICHARDS, LAYTON & FINGER, P.A.<br>he@rlf.com |
| Pantech Wireless Inc. | */s/ Mary B. Matterer* (#2696)<br>MORRIS JAMES LLP<br>mmatterer@morrisjames.com |
| Sony Ericsson Mobile Communications | */s/ Mary B. Graham* (#2256)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>mgraham@mnat.com |

| Counsel for the 11-827 Defendants ||
|---|---|
| Sprint Spectrum L.P. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| T-Mobile USA Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Tracfone Wireless Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| United States Cellular Corporation | */s/ Steven J. Fineman* (#4025)<br>RICHARDS, LAYTON & FINGER, P.A.<br>fineman@rlf.com |
| Virgin Mobile USA L.P. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| ZTE USA Inc. | */s/ Steven J. Balick* (#2114)<br>ASHBY & GEDDES<br>sbalick@ashby-geddes.com |

| Counsel for the 11-830 Defendants ||
|---|---|
| Alcatel-Lucent USA Inc. | */s/ John W. Shaw* (#3362)<br>SHAW KELLER LLP<br>jshaw@shawkeller.com |
| Audiocodes Inc. | */s/ Denise Seastone Kraft* (#2778)<br>DLA PIPER LLP<br>denise.kraft@dlapiper.com |
| Siemens Enterprise Communications, Inc. | */s/ Sean T. O'Kelly* (#4349)<br>O'KELLY ERNST & BIELLI, LLC<br>sokelly@oebwlegal.com |
| Toshiba America Information Systems, Inc. | */s/ Robert W. Mallard* (#4279)<br>DORSEY & WHITNEY LLP<br>mallard.robert@dorsey.com |

| | **Counsel for the 11-833 Defendants** |
|---|---|
| Best Buy Purchasing, LLC | */s/ Anne S. Gaza* (#4093)<br>RICHARDS, LAYTON & FINGER, P.A.<br>gaza@rlf.com |
| Denon Electronics (USA), LLC | */s/ Whitney W. Deeney* (#5155)<br>SAUL EWING LLP<br>WDeeney@saul.com |
| Memorex Products Inc. | */s/ Kevin G. Collins* (#5149)<br>BARNES & THORNBURG LLP<br>kevin.collins@btlaw.com |
| Mitsubishi Electric Visual Solutions America, Inc. | */s/ Gregory B. Williams*(#2168)<br>FOX ROTHSCHILD LLP<br>gwilliams@foxrothschild.com |
| Pioneer Electronics (USA) Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Toshiba America Information Systems, Inc. | */s/ Robert W. Mallard* (#4279)<br>DORSEY & WHITNEY LLP<br>mallard.robert@dorsey.com |
| Vizio, Inc. | */s/ Pilar G. Kraman* (#5199)<br>YOUNG CONAWAY STARGATT & TAYLOR LLP<br>pkraman@ycst.com |

| | **Counsel for the 11-834 Defendants** |
|---|---|
| Amazon.com., Inc. | */s/ Richard L. Horwitz* (#2246)<br>POTTER, ANDERSON & CORROON LLP<br>rhorwitz@potteranderson.com |
| DHL Express (USA) Inc. | */s/ Eve H. Ormerod* (#5369)<br>GREENBURG TRAURIG LLP<br>ormerode@gtlaw.com |
| Equinox Payments LLC | */s/ Rex A. Donnelly* (#3492)<br>RATNERPRESTIA<br>radonnelly@ratnerprestia.com |

| Counsel for the 11-834 Defendants ||
|---|---|
| Federal Express Corporation | */s/ Steven J. Balick* (#2114)<br>ASHBY & GEDDES<br>sbalick@ashby-geddes.com |
| Hypercom Corp. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Ingenico Corp. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Motorola Solutions Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Nintendo of America Inc. | */s/ Richard L. Horwitz* (#2246)<br>POTTER, ANDERSON & CORROON LLP<br>rhorwitz@potteranderson.com |
| United Parcels Service Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |
| Verifone Systems Inc. | */s/ Karen Jacobs Louden* (#2881)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>klouden@mnat.com |

| Counsel for the 11-835 Defendants ||
|---|---|
| EchoStar Technologies LLC, Echostar Corporation, Dish Network LLC | */s/ Laina M. Herbert* (#4717)<br>PRICKETT, JONES & ELLIOTT, P.A<br>Lmherbert@prickett.com |