

222 Delaware Avenue • Suite 900  
P.O. Box 25130 • Wilmington, DE 19899  
Zip Code For Deliveries 19801

Writer's Direct Access:  
(302) 429-4232  
Email: sbrauerman@bayardlaw.com

January 22, 2013

**BY CM/ECF**

The Honorable Sue L. Robinson  
United States District Court for the District of Delaware  
844 North King Street  
Wilmington, DE 19801

    Re:    *Cyberfone Systems Litigation,* C.A. Nos. 11-827; 11-830; 11-833; 11-834

Dear Judge Robinson:

    Pursuant to the Court's December 19, 2012 Order (D.I. 325 in C.A. No. 11-827; D.I. 149 in C.A. No. 11-830; D.I. 174 in C.A. No. 11-833; D.I. 290 in C.A. No. 11-834), Plaintiff Cyberfone Systems LLP ("Cyberfone") responds to Defendants' January 7, 2013 letter, which proposes an early round of claim construction on some (but not all) of the terms at issue in this litigation and a second early round of summary judgment motions, all prior to the commencement of discovery beyond the Delaware Default Standard.

    Cyberfone respectfully requests that the Court deny Defendants' request, because early construction of the terms Defendants identify in their letter – "form-driven operating system," "transaction assembly server (TAS)," "client module," and "computer code for generating a data transaction" – will not resolve this case and will unduly burden the Court and the parties with at least two rounds of interrelated claim construction briefing.

    The basic factual disputes over whether the software involved in the accused products practices the patents will remain even after construction of these terms, and the parties will need to review source code and complete expert discovery to present the issues to the Court. Early claim construction will not make these issues ripe for summary judgment. Defendants begin from their conclusion – that nothing currently described as an operating system can be a form-driven operating system[1] – and work backwards to justify their request for early claim construction. Defendants gloss over the factual record, leaving the impression that the bulk of the litigation is about Android or Apple's iOS, or smartphones with gigabytes of memory. In reality, preliminary discovery and public information indicates that approximately ***twenty***

---

[1] Defendants also claim that some accused devices have no operating system at all, and conclude without explanation (or discovery) that the computer software that runs these devices also cannot qualify as a form-driven operating system under the asserted patents.



*separate operating systems* are currently at issue,[2] ranging from Apple's iOS to PSOS, an embedded operating system on the UPS handheld Diad III device, which runs on a mere 6.5 MB of RAM.[3] For many of these operating systems, virtually no discovery has taken place. No source code has been produced for any of the accused devices. Under nearly any claim construction of the four terms Defendants identify, the Court will not be in a position properly to assess whether the accused devices practice the patents until discovery by the parties' experts into the software running on the devices takes place. Discovery of source code in a software patent case is the norm, not the exception.

The initial complaints were filed in these matters sixteen months ago. It is now time for discovery regarding the software at issue to begin. The scope of these cases is greatly reduced. Of the twenty-two cases initially filed, only four cases remain, and dozens of defendants have taken licenses to Dr. Martino's patents. Ultimately, however, the cases must proceed, and Cyberfone proposes that discovery begin now to minimize or eliminate any further delay to the schedule.

**I.    Early Claim Construction Will Not Resolve Case**

In arguing for early claim construction, Defendants conflate a ***conventional*** operation system with any kind of operating system. From this, they conclude (without any support) that any product with an operating system therefore must fall outside the scope of the patents.[4] Defendants are wrong, and their conflation of these two distinct systems ignores Dr. Martino's inventions, which allow remote devices to operate without the expense and hardware requirements of a conventional operating system while maintaining user flexibility. In other words, Dr. Martino's inventions "permit the owner [of a transaction entry device] to connect to a remote database without owning a **conventional computer system** or understanding computer operation." ('382, 30:44-47 (emphasis added).) Some, but not all, claims in some of Dr. Martino's patents use the term "form-driven operating system" to describe the software these devices use instead of conventional operating systems.

In the early 1990s, Dr. Martino recognized that conventional operating systems at the time, as is still the case today, were "quite costly to purchase and maintain." ('382, 2:12-13.) As the specification for the '382 patent notes, these conventional operating systems, such as Windows 95, also typically "require[d] a great amount of memory and utilize[d] a great deal of processor overhead to operate efficiently." ('382, 2:40-42.) Thus, one of his goals was to create a data entry system "which does not have the inherent limitations of conventional point-of-entry systems such as the requirement of a **standard operating system** for communication with a remote service bureau or file server." ('382, 2:14-18 (emphasis added).)

Dr. Martino's vision of a connected world in which devices such as mobile telephones, electronic gaming devices, media players, and mobile scanners would allow users to conduct transactions and leverage the power of remote computer servers – without the cost, memory, or

---

[2] As explained below, for some products, Cyberfone is simply aware that defendants use an unnamed "proprietary operating system." Cyberfone has not yet had access to the relevant source code.
[3] *See, e.g.*, http://www.drdobbs.com/recipes-for-network-appliances/184413337.
[4] Although the specification also describes an alternative embodiment in which "the TAS of the invention may be used in a conventional operating system environment," ('382, 32:32-33), Cyberfone has dismissed those defendants whose products involved such an infringement theory to streamline the litigation.



The Honorable Sue L. Robinson
January 22, 2013
Page 3

processor burdens of a conventional operating system – proved prescient. The accused products in this litigation fall within the scope of these inventions. Instead of running full conventional operating systems, like Windows 7 or Mac OS X, these devices employ software that is cheaper, less complex, and requires less memory and processing power to run.

The very passages of the patents upon which Defendants rely demonstrate the ways in which the patents repeatedly describe how Dr. Martino's inventions would replace a conventional operating system:

> "However, since the data transactions are created without the use of a **conventional operating system** or application programs, the transaction entry device is quite simple and inexpensive and may be readily integrated with the customer's desktop telephone or portable telephone, implemented on a disk, a board, or a PCMCIA card for insertion into a standard personal computer, or implemented in a video control box." ('382, 3:16-23 (emphasis added).)

> "TAS 18 does not utilize a **conventional operating system** to control the processing of application software." ('382, 16:43-45 (emphasis added).)

> The invention uses "a simple form driven operating system **in place of the conventional operating system** and application programs, thereby **eliminating much of the overhead and hardware requirements** conventionally required in prior art data transaction terminals." ('676 History, 3/13/1997 Resp. at 18-19 (Ex. 3 to Defendants' January 7, 2013 letter) (emphasis added).)

> "As noted above, the transaction assembly (application) server (TAS) is a data stream stored in TAS PROM 95 which together with the forms from form/menu memory 96 create a simple form driven operating system which provides the necessary control data (firmware) to microprocessor 94 so that no **conventional operating system is necessary**." ('676, 16:11-16 (emphasis added).)

> "[T]he TAS firmware from TAS PROM 95 and menus and forms from form/menu memory 96 of the invention together **replace a conventional operating system** and individual application programs." ('676, 14:13-16; '382, 17:24-27 (emphasis added).)

> The objective of the invention is "**[e]limination of the requirement of a conventional operating system** and the associated application programs . . . ." ('676, 1:61-2:1 (emphasis added).)

The patents also describe the characteristics of conventional operating systems, which are costly, and which make significant demands on the memory and processing power of the device. Dr. Martino's inventions, however, replace this conventional operating system with software (including a form-driven operating system) that allows user to accomplish tasks on remote devices with significantly less memory and processing power requirements. As a result, fact issues about whether the accused devices rely on conventional operating systems or on the kind of software disclosed in Dr. Martino's patents will survive, notwithstanding the Court's construction of Defendants' hand-selected terms.

Case 1:11-cv-00830-SLR   Document 151   Filed 01/22/13   Page 4 of 6 PageID #: 1064

The Honorable Sue L. Robinson
January 22, 2013
Page 4



## II. Fact Issues Regarding Whether The Over 20 Operating Systems At Issue Qualify As "Form-Driven Operating Systems" Prevent Summary Judgment

In arguing for early claim construction and a second round of early summary judgment, Defendants ignore key factual disputes, and the degree to which the parties must take discovery before any determination on Cyberfone's claims properly can be made.

As a preliminary matter, Cyberfone believes that approximately twenty different operating systems are at issue in the accused devices for the remaining defendants. Some of the accused software consists of the following:

- Android
- Brew Mobile
- Hypersafe 32 OS
- iOS
- Nurit
- PSOS
- Symbian
- Telium
- WebOS
- Windows CE
- Windows Embedded CE 6.0
- Windows Pocket PC 2003
- Windows Mobile 5
- Windows Mobile 6
- Windows Mobile 6.5
- Windows Phone 7

These operating systems present discrete factual issues as to whether these various mobile and limited operating systems are form-driven operating systems (as Cyberfone contends), or conventional operations systems (as Defendants apparently contend). Defendants' suggestion that early summary judgment is appropriate for all of these operating systems after the construction of just four claim terms is overstated. The technical issues will vary from device to device, with discovery and testimony needed on, for instance, the embedded operating system PSOS in UPS's Diad III handheld devices, the Hypersafe software on Hypercom point-of-sale terminals, and the Symbian software present on Nokia's cellular telephones.[5]

Indeed, for a number of accused devices, the exchange of information pursuant to the Default Standard factual record so far has only established that the devices run a "proprietary operating system." Claim construction on the term "form-driven operating system" cannot possibly allow for summary judgment on such devices, where the parties have not conducted any substantive discovery on how the devices work. For example, the following accused telephones

---

[5] Some of the accused devices run on embedded operating systems that trace their history to Windows CE. Microsoft, in announcing the release of Windows CE 2.0 in September 1997, explained well how this kind of operating system could allow for enhanced functionality in computing appliances without the need for a conventional operating system and the significant hardware required by those conventional operating systems: "Windows CE was designed and built from the ground up as an embedded platform to empower the development of a new range of emerging computing appliances, including highly portable and personal computing devices such as Handheld PCs (H/PCs), game consoles, smart phones, TV set-top boxes, DVD players and home appliances, as well as traditional embedded applications such as process monitoring and control, instrumentation, data collection, computer peripherals, office equipment, point-of-sale devices and telecommunications. . . . The modular, scalable Windows CE platform allows hardware manufacturers to select from a rich set of services only the functionality required for their applications, enabling the development of devices with a capable set of services in as little as 512K of ROM and 256K of RAM." (Ex. A.)


from three separate defendants are listed on the AT&T developer website as simply having a "proprietary operating system": Pantech Impact, Sony Mobile W580, ZTE R225[6]

The parties will need to take discovery on how the proprietary software on these devices operate before the Court can properly determine whether these devices practice the patents.

### III.  Defendants' Arguments Regarding The '024 Patent Fail

Defendants, almost in passing, argue that two terms – "client module" and "computer code for generating a data transaction" – in the '024 patent, asserted against Apple, Alcatel, Audiocodes, Toshiba, and Siemens, should given the same constructions as the "form-driven operating system" and "transaction assembly server (TAS)."  In doing so, Defendants ignore fundamental principles of claim construction in order to frame the dispute regarding four terms as a dispute over two.  Defendants fail to address, for instance, the plain and ordinary meaning of the term "client module" to one of ordinary skill in the art.  Defendants do not explain why the Court should construe these terms and do not provide any support for their contention that "client module" equates with "form-driven operating system."  Defendants' argument is unavailing. Most importantly, Defendants acknowledge that even construction of its four proposed terms will *not* resolve all of the asserted independent claims of the '024 patent, so additional work will occur even if the Court adopts Defendants' "streamlined" proposal.

### IV.  Defendants' Proposal Will Significantly Increase Delay And Costs

Defendants' proposal actually will increase the burden on the Court and the parties, further slowing down this litigation.  When considering this request, the Court should remember that Defendants already sought early summary judgment once.  Allowing Defendants to present their best arguments, in seriatim, while preventing Cyberfone from discovering the evidence necessary to carry its burden is inefficient and prejudicial.

Even if the Court accedes to Defendants' request and construes these four terms early, Defendants will likely seek the construction of at least a dozen more claim terms among the asserted patents.  Notably, Cyberfone asked Defendants to identify all claim terms needing construction, so that Cyberfone and the Court could understand how this early *Markman* proceeding would fit into the comprehensive claim construction process.  Defendants refused to disclose their list of claim terms for construction to Cyberfone.  Cyberfone must conclude as a result that Defendants do not want the Court to know how many additional terms they will seek to construe, which would undercut any purported "efficiency" to their proposal.

Defendants' proposal will lead to multiple rounds of *Markman* and summary judgment briefings and multiple *Markman* and summary judgment hearings.  The Court is well aware of the mischief that even a unified *Markman* hearing may create early in a case.  Defendants' piecemeal approach to claim construction dramatically increases the burden on the Court and amplifies the opportunities for gamesmanship and delay.

Furthermore, the proposed goal of Defendants' early *Markman* proceeding is simply incompatible with the factual record in this matter.  The parties need to conduct discovery so that a full assessment can be made regarding the accused software and devices.  An additional round of early summary judgment motions regarding the unproduced and uninspected software at issue will simply delay the case further.  For all of these reasons, Cyberfone respectfully requests that the Court deny Defendants' requests for early claim construction and early summary judgment.

---

[6] (Ex. B.)



Respectfully submitted,

*/s/ Stephen B. Brauerman*

Stephen B. Brauerman (sb4952)

SBB:cer
enclosure
cc:     All counsel