IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-827 (SLR) |
| | ) | |
| CELLCO PARTNERSHIP, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-830 (SLR) |
| | ) | |
| AVAYA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-833 (SLR) |
| | ) | |
| SONY ELECTRONICS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-834 (SLR) |
| | ) | |
| FEDERAL EXPRESS CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
THEIR PROPOSED EARLY CLAIM CONSTRUCTIONS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.   SUMMARY OF THE ARGUMENT ............................................................................. 1

II.  ARGUMENT ................................................................................................................. 1

    A.   Form Driven Operating System ......................................................................... 1

        1.   CyberFone Ignores the Intrinsic Evidence ............................................. 1

        2.   CyberFone's Construction Does Not Clarify The Meaning Of "Form Driven Operating System" ........................................................ 4

        3.   The Intrinsic Record Dictates Defendants' Proposed Construction ............................................................................................. 6

    B.   The '024 Patent: "Client Module" ...................................................................... 9

    C.   Transaction Assembly Server ........................................................................... 11

        1.   Defendants' Proposed Construction Is In Accord With the Intrinsic Evidence ................................................................................... 12

        2.   CyberFone Fails to Rebut Defendants' Supporting Evidence for its Construction of "Transaction Assembly Server (TAS)" .................................................................................................. 12

        3.   CyberFone's Proposed Construction Improperly Incorporates Limitations Already in the Claim and Merely Duplicates CyberFone's Proposed Construction for "Form Driven Operating System" ................................................................. 13

III. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AstraZeneca AB v. Mutual Pharm. Co.,*
    384 F.3d 1333 (Fed. Cir. 2004)..................................................................................8

*Bicon Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006)..................................................................................13

*Comark Communications, Inc. v. Harris Corp.,*
    156 F.3d 1182 (Fed. Cir.1998)..................................................................................14

*Computer Docking Station Corp. v. Dell, Inc.,*
    519 F.3d 1366 (Fed. Cir. 2008)..................................................................................2

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012)..................................................................................7

*E-Pass Tech., Inc. v. 3COM Corp., et al.,*
    343 F.3d 1364 (Fed. Cir. 2003)..................................................................................14

*E-Pass Technologies, Inc. v. 3Com Corp.,*
    473 F. 3d 1213 (Fed. Cir. 2007)..................................................................................4

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,*
    452 F.3d 1312 (Fed. Cir. 2006)..................................................................................7, 8

*NTP, Inc. v. Research In Motion, Ltd.,*
    418 F.3d 1282 (Fed. Cir. 2005)..................................................................................4

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
    429 F.3d 1364 (Fed. Cir. 2005)..................................................................................7

*Phillip M. Adams & Associates, LLC v. Dell, Inc.,*
    2010 U.S. Dist. LEXIS 68749 (D. Utah, Jul. 9, 2010)..................................................14

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................................8, 10

*Saffran v. Johnson & Johnson,*
    ___ F. 3d ___, 2013 WL 1338910 (Fed. Cir. Apr. 4, 2013)..........................................2

STATUTES

35 U.S.C. § 112 ¶ 1 ..................................................................................................10

## I.      SUMMARY OF THE ARGUMENT

The dispute regarding the terms "form driven operating system" and "transaction assembly server (TAS)" can be condensed to one key inquiry−namely, whether the claims exclude operating systems that run application programs.  Based on the intrinsic record, the claims must be construed to exclude such an operating system.  Not only is this construction consistent with the specification, but it accounts for the inventor's purported objective in conceiving the claimed inventions.  CyberFone ignores the language in the specification and dismisses the many amendments and arguments made to overcome the Patent Office's prior art rejections during prosecution.  As a result, CyberFone's constructions, which conflict with the intrinsic record, fail to clarify the meaning of these terms.  Defendants thus respectfully request that the Court adopt Defendants' proposed constructions.

## II.     ARGUMENT

### A.      Form Driven Operating System[1]

| Defendants' Proposed Construction | CyberFone's Proposed Construction |
|---|---|
| firmware together with forms that serve as the sole code for controlling a microprocessor, instead of an operating system that runs application programs | Computer code for developing data transactions, which, together with forms, controls the behavior of the microprocessor by logically defining a table of menu options and/or database interfaces.  A form driven operating system is not a conventional operating system (such as DOS or Windows). |

#### 1.      CyberFone Ignores the Intrinsic Evidence

CyberFone's proposed construction does not distinguish the "form driven operating system" from any other operating system.  CyberFone's construction, if adopted, would

---

[1]    The term appears in the '676 Patent, claims 1, 13, 39; the '103 Patent, claims 1, 15, 18, 45; and the '382 Patent, claims 1, 13, 19, 22, 30, 34, 36.

encompass embodiments, including operating systems which run applications that the patentee specifically disavowed.   CyberFone ignores the patentee's disclaimers and amendments to overcome the prior art[2] and its proposed construction thus contradicts the intrinsic record and cannot stand.  *See, e.g., Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1378 (Fed. Cir. 2008) ("[T]he prosecution history must always receive consideration in context.").

Indeed, CyberFone's construction disregards the most fundamental requirement of the form driven operating system:   that it replaces an operating system that runs application programs.   The specification repeatedly and unequivocally states that the invention operates without the use of application programs.  *See* '676 Patent, cols. 2:37-40; 4:17-22; 13:50-56; 14:13-16.   And the patentee distinguished prior art references based on the fact that they ran application programs.  *See* D.I. 343 ("Murphy Decl."), Ex. E at p. 18 ('676 Patent File History, March 18, 1997 Resp.).   CyberFone's attempt to ignore these clear teachings in an effort to regain scope that it expressly disavowed is not proper.  *See, e.g., Saffran v. Johnson & Johnson*, ___ F. 3d ___, 2013 WL 1338910, at *6-8 (Fed. Cir. Apr. 4, 2013) (holding that a claim term must include a limitation that was a "key feature" in distinguishing the prior art during prosecution).

According to CyberFone, the accused devices "employ software that is cheaper, less complex, and requires less memory and processing power to run" instead of "full conventional operating systems."  CyberFone's Answer Brief, D.I. 351 ("Brief"), at 2-3.  But what CyberFone unambiguously disclaimed was operating systems that run application programs, not operating

---

[2]   As described in Defendants' opening brief, the term "form driven operating system" was coined by Martino and Cyberfone.   Defendants need not show lexicography or a clear and unequivocal disclaimer to support their proposed claim construction.  *E.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

systems that are not "full" or below some indefinite threshold of cost, complexity, or memory and processing requirements.

Moreover, CyberFone ignores the specification's teachings regarding the type of code in the form driven operating system.   There is no support in the specification for CyberFone's broad-brush proposal of "computer code for developing data transactions . . ."  To the contrary, the specification consistently associates the TAS portion of the form driven operating system with "firmware" or "microcode" that is located in a "PROM"—requiring specific and discrete types of code, not any generic type of "computer code."  *See, e.g.*, '676 Patent, cols. 2:52-55, 3:4-6, 3:59, 4:4, 6:21, 6:28, 6:43-54, 12:61, 13:4, 14:5-22, 14:34.   CyberFone's reliance on the generic term "computer code" is both overbroad and inconsistent with the intrinsic record.

CyberFone's other arguments fare no better.   For example, contrary to CyberFone's conclusory and self-supporting assertion that its construction gives meaning to the function and purpose of the invention, its proposed construction does not explain "what makes a 'form driven operating system' form driven, as opposed to conventional."  *See* Brief, p. 6.   In fact, CyberFone's proposed construction does not describe the characteristics of the form driven operating system at all, let alone explain how it is different from a conventional system.   By contrast, Defendants' construction explains what makes a system "form driven"−its use of firmware with forms without the use of an operating system running application programs.

While CyberFone also seizes on its use of the word "conventional," it does not explain what the term "conventional" means. [3]  The words in a court's claim construction should define

---

[3]   CyberFone asserts that its construction reflects its prosecution disclaimer by excluding devices than run "a conventional operating system (such as DOS or WINDOWS) and an application program."  But CyberFone maintains infringement assertions against devices running Microsoft Windows and an application program.   CyberFone's proposed construction thus does
(Continued . . .)

the claim scope in dispute, not simply invite further interpretation. *See E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F. 3d 1213, 1220 (Fed. Cir. 2007). Without any clear definition in the intrinsic evidence, use of the word "conventional" only further obscures the term "form driven operating system" and will not be helpful to the fact finder.

## 2. CyberFone's Construction Does Not Clarify The Meaning Of "Form Driven Operating System"

The purpose of claim construction is to resolve "disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1311 (Fed. Cir. 2005) (citation omitted). CyberFone acknowledges that the TAS portion of the form driven operating system is tied to "firmware," "microcode," and "PROM" in the specification, but argues that these "varied descriptions of TAS" mean it would be improper to use "firmware" in the construction and that it never distinguished the prior art based on the concept of "firmware." *See* Brief, pp. 7-8.

CyberFone is mistaken, as it distinguished the prior art (operating systems with application programs) from its approach, which CyberFone explained required a **TAS**, described as "a data stream stored in TAS **PROM** 95" (alternatively called the "**microcode** of the TAS PROM 95") "which together with the forms from form/menu memory 96 create a simple form driven operating system which provides the necessary control data (**firmware**) to microprocessor 94 so that no conventional operating system is necessary. '676 Patent, cols. 13:50-56, 16:11-16

---

(. . . continued)
not appear to impose any meaningful limitation reflecting the disclaimer on CyberFone's intended infringement allegations.

(emphasis added).  There is no "varied description" of the TAS within the specification, just different words describing the firmware concept that CyberFone now seeks to avoid.

Similarly, CyberFone's added phrase "for developing data transactions" is superfluous because the data transactions are discussed in other language of the asserted claims.  For example, Claim 1 of the '676 Patent has other limitations that state: "to accept input data of a desired transaction type," "eliciting data input of said desired transaction type," "at least one prompt customized to said desired transaction type," and "formatting at least any data input by said user in response to said at least one prompt into a data transaction for processing."  Thus, there is no need to include "for developing data transactions" in the interpretation of "form driven operating system" because the other limitations of the claims discuss how the data transaction is developed.

The same is true of the phrase "logically defining a table of menu options and/or database interfaces" because other limitations of the asserted claims already discuss how "menu options" are defined: "using control data comprising at least one form . . . for eliciting data input."  By improperly including in the definition of "form driven operating system" other limitations already present in the claims, Plaintiff, in effect, attempts to make the "form driven operating system" limitation superfluous.

Further, CyberFone's proposal of "data transactions . . . together with forms" is nonsensical, because it conflates two distinct concepts. The specification expressly defines data transactions to consist of forms **plus** data.  '676 Patent col. 5:52-5 ("As used herein, **a data transaction** is the combination of **a form** or template or a series of forms or templates containing data entry prompts **and the data** entered in response to those prompts.") (emphasis added).  Whether viewed as an attempt to read forms out of the express definition of data

transaction or as a clumsy attempt at incorporating the concept of forms twice into the same limitation, a construction which uses data transactions in this manner cannot be correct.

### 3.   The Intrinsic Record Dictates Defendants' Proposed Construction

Contrary to CyberFone's proposal, Defendants' construction describes the structure and function of the invention, and is fully supported by the intrinsic record.  Both in the patent specification and during the Patent Office prosecution, the patentee repeatedly defined his invention as excluding an operating system that ran applications.  As CyberFone cannot dispute the record support for the Defendants' construction, it instead takes issue with two specific components of that construction:  (1) sole code and (2) an operating system.

Defendants' proposal that "form driven operating system" is "firmware together with forms that serve as the *sole code* for controlling a microprocessor . . ." is supported by the specification, which explicitly states that the form driven operating system "is the sole code used to control [the] microprocessor."  *See* '676 Patent, col. 13:50-56.  Thus, the "sole code" of Defendants' proposed construction which CyberFone criticizes <u>are the patentee's own words</u>. CyberFone's attempts to ignore this admission should be rejected.

The patentee also expressly affirmed the concept of "sole code" during prosecution.  *See* Murphy Decl., Ex. E at 22 ('676 Patent File History, March 18, 1997 Resp.).  Notwithstanding this fact, CyberFone erroneously claims that the parenthetical information in the specification, "(i.e., *no conventional operating system or application programs are provided*)," was meant to define "sole code."  *See* '676 Patent, col. 13:50-56 (emphasis added).  *Abbott Labs v. Novopharm Ltd.*, upon which CyberFone relies, however, does not directly address whether the use of "i.e." was meant to be definitional as CyberFone asserts.  Additionally, unlike here, there was support in the intrinsic evidence for a contrary construction of the disputed term.

Here, it is necessary to consider the specification as a whole, and to read it in a manner that renders the patent internally consistent, as well as consider all intrinsic evidence. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005). CyberFone's argument fails to follow this legal standard, because its reading "i.e." as removing the "sole code" requirement is not a logical reading. Further, CyberFone's dismissal of the *Dealertrack* decision is misplaced. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012). Neither *Abbott Labs* nor *Dealertrack* provide any black letter law as to when "i.e." is meant to be definitional. Rather, both decisions were fact specific and based upon the intrinsic record in those matters. Here, the intrinsic record supports Defendants' construction.

CyberFone also complains that Defendants ignore the specification because their construction omits the word "conventional" from "operating system." This criticism is misplaced as it fails to address the construction as a whole. CyberFone wholly ignores the numerous record cites to an operating system that ***runs applications***.[4] The patentee repeatedly distinguished the patents from prior art by referring to the "form driven operating system" as something other than an operating system ***and application programs***.

*Honeywell* is directly on point. There, the Federal Circuit held that the term "electrically conductive fibers" did not include carbon fibers even though carbon fibers are electrically conductive, and the specification did not expressly define the claim term. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1320 (Fed. Cir. 2006). Because the specification criticized the use of carbon fibers, "the written description has gone beyond expressing the patentee's preference for one material over another. Its repeated derogatory statements concerning one type

---

[4]   Notably, CyberFone cites to '676 Patent, col. 13:50-56 on page 8 of its brief to support its proposition that the operating system must be conventional. CyberFone ignores, however, that the very same passage also says that no "application programs" are provided.

of material are equivalent of a disavowal of that subject matter from the scope of the patent's claims." *Id.; see also AstraZeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear disavowal of these other products (and processes using these products)").

Just as the claims in *Honeywell* could not be read to cover disparaged technology, here the claims cannot be construed to cover embodiments of operating systems running application programs that the patentee criticized and consistently distinguished from the claimed invention:

- "[S]ince the data transactions are created **without the use of an operating system** or application programs, the transaction entry device is quite simple and inexpensive . . . ." '676 Patent, col. 2:37-40 (emphasis added).

- "The telephone/transaction entry device and the associated system for storing transaction data in accordance with the invention . . . . provides a simple, user friendly way to enter transaction data **without requiring a local operating system to run various application programs.**" *Id*. at col. 4:17-22 (emphasis added).

- "The microcode of the TAS PROM 95 and the parameter streams from the form/menu memory 96 thus operate together as a simple form driven operating system for microprocessor 94 for all applications and is the **sole code** used to control microprocessor 94 (i.e. **no conventional operating system or application programs are provided.**)" *Id*. at col. 13:50-56 (emphasis added).

- "[T]he TAS firmware from TAS PROM 95 and menus and forms from form/menu memory 96 of the invention **together replace a conventional operating system and individual application programs.**" *Id*. at col. 14:13-16 (emphasis added).

Thus, CyberFone's broad reading of "form-driven operating system" cannot be reconciled with the teachings of the specification. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[C]laims must be read in view of the specification, of which they are a part.") (internal quotations and citation omitted). The patentee made clear that his invention does not encompass operating systems running application programs, a fact that Cyberfone cannot now ignore.

- 8 -

In addition to defining the form-driven operating system in the patents' disclosure, the patentee plainly disavowed operating systems that **run applications**. The term "form driven operating system" was added to independent claims to overcome a prior art rejection by the Examiner in the '676 Patent. *See* Murphy Decl., Ex. E at p. 18-19 ('676 Patent File History, March 18, 1997 Resp.).

Dr. Martino explained that he "amend[ed] the claim language to specify that the invention uses a simple form driven operating system **in place of the conventional operating system and application programs conventionally required** in prior art data transaction terminals." *Id.* (emphasis added). He further argued that the prior art "nowhere discloses a low cost terminal device which uses a form driven operating system instead of conventional application programs running on a standard operating system to facilitate the entry of data into one or more remote databases." *Id.* at 27. Thus, Martino's disclaimer of "conventional" operating systems, at a minimum, disclaims operating systems that run applications.

CyberFone also criticizes Defendants' construction for not mentioning "the forms and menus at the heart of Dr. Martino's invention." Brief, p. 10. But there is no reason for every term to reflect the words "forms" and "menus" where the claims already reflect those concepts. Claim 1 of the '676 patent, for example, uses "form" and "menu" at least a half-dozen times each. Defendants' construction reflects the heart of the invention more closely than CyberFone because Defendants recognize that the form-based system of Dr. Martino did not include input screens generated by application programs running on operating systems.

## B.   The '024 Patent: "Client Module"

As discussed in Defendants' opening brief, the claims and specification of the '024 patent are clear on two points:  (1) a "client module" is executed by a processor to generate a data transaction;  and (2) the form driven operating system, as defined by the patentee, is the *only*

*thing* that may run on the processor.  Thus, the only conclusion consistent with the specification is that the "client module" is equivalent to a "form driven operating system."  A construction wherein "client module" and "form driven operating system" are not equivalent ignores the clear and unambiguous teachings of the patent because−contrary to the intrinsic record−it would allow for something other than the form driven operating system to run on the processor.  *See Phillips*, *supra*. (claims "must be read in view of the specification, of which they are part").

CyberFone makes no attempt to reconcile the recitation of the claims with the teachings of the patent and does not point to any portion of the specification demonstrating that "client module" has a broader meaning. Instead, CyberFone seeks to sidestep the teachings of the patent by invoking the so-called plain and ordinary meaning of the term "client module."  But to the extent that "client module" has a plain and ordinary meaning, the clear language of the claims unambiguously demonstrates that the patentee attached a different meaning to this term−*i.e.* the same meaning as "form driven operating system."  CyberFone cannot now abandon this meaning in favor of a litigation-based approach necessary to support its infringement position.

Indeed, to the extent that CyberFone asserts that "client module" should be construed as something other than "form driven operating system," such a construction runs afoul of the written description requirement of 35 U.S.C. § 112 ¶ 1.  The term "client module" is found only in the claims and does not appear in the specification.  Because "client module" is necessarily limited to its use in the claims−that is, as something that runs on the processor−there is nothing to support the contention that the client module can do anything else (*i.e.*, there is no written description under 35 U.S.C. § 112, ¶ 1 to support a broader scope).  Instead, what is claimed based on the description of functionality is the same as the form driven operating system.  It is thus apparent that "client module" is equivalent to "form driven operating system."

Finally, CyberFone's broad interpretation of "client module" would encompass any discrete computer code that executes to generate a data transaction—including operating systems running applications that the patentee *explicitly disclaimed to overcome prior art*.  See '676 Patent, col. 1:58-60; *see also* Murphy Decl., Ex. E at p. 18-19 ('676 Patent File History, March 18, 1997 Resp.).

For these reasons, "client module" is coextensive with "form driven operating system" and should be defined accordingly.

### C.   Transaction Assembly Server[5]

| Defendants' Proposed Construction | CyberFone's Proposed Construction |
|---|---|
| the firmware component of a form driven operating system | The portion of a form driven operating system that performs at least the two basic functions of 1) generating a template or form from a data stream; and 2) developing a data transaction as the user inputs data in response to prompts in the template or form. |

CyberFone does nothing to assist in interpreting the Transaction Assembly Server (TAS). It cherry picks excerpts from the '676 Patent and ignores the alleged invention as a whole. Conversely, Defendants' construction is firmly rooted in the law and directly supported by the specification of the '676 Patent.  Hence, the Court should adopt Defendants' construction.

---

[5]   The term appears in the '676 Patent, claims 4, 16; '103 Patent, claims, 4, 19; and '382 Patent, claim 1.   CyberFone's brief repeatedly refers to the "***Terminal*** Assembly Server (TAS)," however, the claims refer to "***Transaction*** Assembly Server (TAS)."   Defendants do not agree, as CyberFone claims on page 12 of its brief, that the "terminal assembly server" in combination with forms together create a form driven operating system.

## 2. Defendants' Proposed Construction Is In Accord With the Intrinsic Evidence

The specification defines a form driven operating system as the combination of firmware or microcode stored in a "transaction assembly server (TAS)" and data streams stored in a form memory:

> The microcode of the TAS PROM 95 and the parameter streams from the form/menu memory thus operate together as a simple form driven operating system for microprocessor 94 for all applications and is the sole code used to control microprocessor.

Defendants' Opening Brief, D.I. 342 ("Defendants' Brief"), p. 6.

Simply put, the "form driven operating system" consists of two components—the "transaction assembly server (TAS)" and data streams stored in a form memory. Thus, rearranged, the TAS is the "form driven operating system without the data streams stored in a form memory." Put another way, TAS is "the firmware component of a form driven operating system." *Id.* at 24. Defendants' construction flows directly from the patentee's own words and should be adopted.

## 3. CyberFone Fails to Rebut Defendants' Supporting Evidence for its Construction of "Transaction Assembly Server (TAS)"

CyberFone has failed to address Defendants' support for its construction of TAS. Not only does CyberFone gloss over the actual claimed term in dispute, using *terminal* as opposed to *transaction*, it also ignores Defendants' arguments as to why Defendants' construction of TAS is correct. CyberFone argues three positions—only one of which applies to Defendants' construction of TAS. That is, CyberFone addresses Defendants' contention that CyberFone's construction contains "superfluous" limitations. *See id.* at 13. Rather than supporting its construction with evidence from the intrinsic record, or providing an analysis of the claim term, CyberFone argues a legal position. It thus implicitly recognizes Defendants' position is correct:

- 12 -

the Court's resolution of the legal argument makes non-infringement ripe for summary judgment. Its next two points do not refer to TAS; instead they focus on the claimed language "computer program code for generating a data transaction."[6] *See id.* at ¶¶ IV. D. 2. & 3.

### 4. CyberFone's Proposed Construction Improperly Incorporates Limitations Already in the Claim and Merely Duplicates CyberFone's Proposed Construction for "Form Driven Operating System"

By ignoring the support Defendants have provided from the '676 Patent's intrinsic record, CyberFone does not address the fact that its proposed construction of TAS largely replicates "form driven operating system." *See* Defendants' Brief, p. 20. By defining both terms as performing the same functions (creating forms and generating data transactions), CyberFone fails to provide a distinction helpful to the trier of fact. *Id.* Claims are to be construed with an eye toward giving effect to all terms in the claim and "should not [be] treated as meaningless." *Bicon Inc. v. Straumann Co.*, 441 F.3d 945, 950, 951 (Fed. Cir. 2006). CyberFone ignores this problem.

In addition to its other objections, CyberFone criticizes Defendants' construction as adding a limitation because it specifies that the TAS is the firmware component of a form-driven operating system. That, however, is what the patents teach. As noted above, the specification consistently associates the TAS portion of the form driven operating system with "firmware," "microcode," and "PROM." CyberFone strikes a key phrase where the specification repeatedly makes clear the idea that the TAS is "absolutely self-contained in its relationship to the hardware," and is always stored in the TAS PROM. *See id.* at 21. *Compare* (Brief, p. 12).

The portion of a form driven operating system that performs at least the two basic functions of (1) generating a template or form from a data stream; and

---

[6]   Apple, the party for which this term was relevant, has recently settled with CyberFone.

> (2) developing a data transaction as the user inputs data in response to prompts in the template or form.

*with* (Defendants' Brief, p. 21):

> The TAS ~~is absolutely self-contained in its relationship to the hardware of the transaction entry device and in general~~ performs the two basic functions of (1) generating a template or form from a data stream and (2) developing a data transaction as the user inputs data in response to 60 [] prompts in the template or form.

Putting this misstatement aside, CyberFone's arguments and construction fail to capture the limitation of the TAS portion of the form driven operating system as firmware. *See id.* at 15. Instead, CyberFone puts forward a confusing argument about the consistently variable usage and association of multiple terms—"firmware," "microcode," and "PROM"—that in its view should dictate a construction of the term which is so broad as to be meaningless. *See* Brief, p. 8. CyberFone's argument has no basis in either the intrinsic record or the art.

The term firmware is well-known in the art to mean code or data stored or embedded in read-only memory. *See* Defendants' Brief, p. 6, n.9. At least one District Court has construed the meaning of "firmware" as "instructions or data that are embedded in a particular hardware device." *Phillip M. Adams & Associates, LLC v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 68749, at *53 (D. Utah, Jul. 9, 2010). In this case, the TAS code is embedded in a PROM and is absolutely self-contained in its relationship to the hardware of the transaction entry device; it is firmware. Defendants' construction supports the very objective of the claimed invention. *See E-Pass Tech., Inc. v. 3COM Corp., et al.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("Where claim language is ambiguous, the purpose of the invention described in the specification may, of course, sometimes be useful in resolving the ambiguity."); *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir.1998) (noting that interpreting claim language in light of the specification is proper when a term is "so amorphous that one of skill in the art can

only reconcile the claim language with the inventor's disclosure by recourse to the specification").

CyberFone does not explain its assertions that TAS is not limited to firmware, and its citations to the Patent support Defendants' construction that the TAS **is** a firmware component:

> • The TAS **firmware** of the invention stores the options as well as control programs (microcode) for the processor for use with the templates in creating the data transactions. ('676 Patent, col. 6:43-45).

> • Thus, the TAS PROM 95 contains control data (**firmware**) for the microprocessor 94 and resides in each transaction entry device 12 for generating a template for a data transaction from a data stream stored in form/menu memory. ('676 Patent, col. 13:65- 14:1).

Brief, p. 12-13 (emphasis added).

In contrast, CyberFone's proposed construction of TAS fails to describe the structure at the crux of the claimed invention: the fact that the TAS "computer code" is embedded on a PROM, is absolutely self-contained, and understood in the art to constitute what is commonly referred to as firmware. The TAS firmware, together with forms, constitutes the form-driven operating system of the claimed invention without the need for an operating system that runs application programs, enabling cheap and simple point-of-entry devices. This is the very essence of the claimed invention, and is supported only by Defendants' construction.

## III.   CONCLUSION

Defendants' proposed constructions are true to the intrinsic evidence and to the patentee's objective in conceiving his claimed inventions. CyberFone's brief failed to clarify its muddled, expansive constructions that are at odds with the intrinsic evidence. For the foregoing reasons, Defendants respectfully request that the Court adopt their proposed constructions for each of the disputed claim terms.

## DEFENDANTS' SIGNATURES FOR 11-827 (SLR)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Regina S.E. Murphy
_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Regina S.E. Murphy (#5648)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
rmurphy@mnat.com

Attorneys for HTC America, Inc

OF COUNSEL:

Yar R. Chaikovsky
Michael V. Sardina,
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
(650) 815-7400

Daniel R. Foster
MCDERMOTT WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
(949) 851-0633

MORRIS JAMES LLP

/s/ Mary B. Matterer
_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
rherrmnan@morrisjames.com
mmatterer@morrisjames.com

Attorneys for Pantech Wireless, Inc.

OF COUNSEL:

Alan A. Wright
Cecil S. Chung
Wayne M. Helge
H.C. PARK & ASSOCIATES, PLC
8500 Lessburg Pike, Suite 7500
Vienna, VA  22182
(703) 288-5105

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Steven J. Fineman*

_____

Gregory P. Williams (#2168)
Steven J. Fineman (#4025)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
williams@rlf.com
fineman@rlf.com

*Attorneys for United States Cellular Corporation*

OF COUNSEL:

Richard J. O'Brien
Robert D. Leighton
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____

Steven J. Balick (#2114)
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for ZTE (USA) Inc.*

OF COUNSEL:

Barry W. Graham
Yanbin Xu
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER L.L.P.
901 New York Avenue, N.W.
Washington, DC  20004-4413
(202) 408-4000

**DEFENDANTS' SIGNATURES FOR 11-830 (SLR)**

SHAW KELLER LLP

/s/ Andrew E. Russell

_____

John W. Shaw (#3362)
Andrew E. Russell (#5382)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 476-2050
jshaw@shawkeller.com
arussell@shawkeller.com


Attorneys for Alcatel-Lucent USA, Inc.


DLA PIPER LLP (US)

/s/ Aleine Porterfield

_____

Denise S. Kraft (#2778)
Aleine Porterfield (#5053)
Brian A. Biggs (#5591)
919 North Market Street, Suite 1500
Wilmington, DE  19801
(302) 468-5700
denise.kraft@dlapiper.com
aleine.porterfield@dlapiper.com
brian.biggs@dlapiper.com

Attorneys for Audiocodes, Inc.

OF COUNSEL:

Leon Medzhibovsky
Airina L. Ordrigues
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY  10020
(212) 335-4500

O'KELLY ERNST & BIELLI, LLC

*/s/ Sean T. O'Kelly*

_____

Sean T. O'Kelly (#4349)
901 North Market Street, Suite 1000
Wilmington, DE  19801
(302) 778-4000
sokelly@oeblegal.com

*Attorneys for Siemens Enterprise
Communications, Inc.*

OF COUNSEL:

James M. Wodarski
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO PC
One Financial Center
Boston, MA  02111
(617) 542-6000

DORSEY & WHITNEY (DELAWARE) LLP

*/s/ Robert W. Mallard*

_____

Eric Lopez Schnabel (#3672)
Robert W. Mallard (#4279)
300 Delaware Avenue, Suite 1010
Wilmington, DE  19801
(302) 425-7171
mallard.robert@dorsey.com
schnabel.eric@dorsey.com

*Attorneys for Toshiba America Information
Systems, Inc.*

OF COUNSEL:

Douglas F. Stewart
Paul T. Meiklejohn
DORSEY & WHITNEY LLP
701 Fifth Avenue, Suite 6100
Seattle, WA  98104
(206) 903-2381

- 19 -

## **DEFENDANTS' SIGNATURES FOR 11-833 (SLR)**

SAUL EWING LLP

BARNES & THORNBURG LLP

*/s/ Whitney W. Deeney*

*/s/ Kevin G. Collins*

_____

_____

James D. Taylor, Jr. (#4009)
Jennifer M. Becnel-Guzzo (#4492)
Whitney W. Deeney (#5155)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6800
jtaylor@saul.com
jbecnel-guzzo@saul.com
wdeeney@saul.com

David M. Powlen (#4978)
Kevin G. Collins (#5149)
1000 North West Street, Suite 1200
Wilmington, DE 19801
(302) 888-4536
david.powlen@btlaw.com
kevin.collins@btlaw.com

*Attorneys for Denon Electronics (USA), LLC*

*Attorneys for Memorex Products, Inc.*

OF COUNSEL:

OF COUNSEL:

John M. Jackson
Matt C. Acosta
Nicole Metcalf
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, TX 75202
(214) 953-6109

Annamarie A. Daley
Aaron A. Myers
BARNES & THORNBURG LLP
225 South 6th Street, Suite 2800
Minneapolis, MN  55402
(612) 333-2111

FOX ROTHSCHILD LLP

/s/ Gregory B. Williams
_____
Gregory B. Williams (#4195)
919 North Market Street, Suite 1300
Wilmington, DE  19801
(302) 622-4211
gwilliam@foxrothschild.com

*Attorneys for Mitsubishi Electric Visual*
*Solutions America, Inc.*

OF COUNSEL:

Laura L. Chapman
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
(415) 434-9100

Victor de Gyarfas
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3500
Los Angeles, CA  90071-2411
(213) 972-4500


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
skraftschik@mnat.com

*Attorneys for Pioneer Electronics (USA), Inc.*

OF COUNSEL:

Daniel R. Foster
Gregory Yoder
MCDERMOTT WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
(949) 851-0633

DORSEY & WHITNEY (DELAWARE) LLP

*/s/ Robert W. Mallard*
_____
Robert W. Mallard (#4279)
300 Delaware Avenue, Suite 1010
Wilmington, DE  19801
(302) 425-7171
mallard.robert@dorsey.com

*Attorneys for Toshiba America Information
Systems, Inc.*

OF COUNSEL:

Paul T. Meiklejohn
Douglas F. Stewart
DORSEY & WHITNEY LLP
701 Fifth Avenue, Suite 6100
Seattle, WA  98104
(206) 903-2381

YOUNG CONAWAY STARGATT & TAYLOR

*/s/ Pilar G. Kraman*
_____
Adam Wyatt Poff (#3990)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for VIZIO, Inc.*

OF COUNSEL:

Adrian M. Pruetz
Avraham Schwartz
GLASER WEIL FINK JACOBS HOWARD AVCHEN
& SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
(310) 282-6250

Steven R. Hansen
Edward S. Quon
LEE TRAN & LIANG APLC
601 South Figueroa Street, Suite 4025
Los Angeles, California 90017
(213) 612-3737

## DEFENDANTS' SIGNATURES FOR 11-834 (SLR)

POTTER ANDERSON & CORROON LLP

*/s/ David E. Moore*

_____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Amazon.com, Inc.*

OF COUNSEL:

J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
William Moseley
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500

GREENBERG TRAURIG, LLP

*/s/ Eve H. Ormerod*

_____
Gregory E. Stuhlman (#4765)
Eve H. Ormerod (#5369)
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000
stuhlmang@gtlaw.com
ormerode@gtlaw.com

*Attorneys for DHL Express (USA), Inc.*

OF COUNSEL:

Michael A. Nicodema
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, NJ 07932
(973) 360-7932

Kimberly A. Warshawsky
GREENBERG TRAURIG, LLP
2375 E. Camelback Rd., Suite 700
Phoenix, AZ 85016
(602) 445-8566

Mary-Olga Lovett
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, TX  77002
(713) 374-3500

RATNERPRESTIA

/s/ Rex A. Donnelly, IV
_____
Rex A. Donnelly, IV (#3492)
Andrew J. Koopman (#5288)
Christopher H. Blaszkowski (#5673)
1007 Orange Street, Suite 1100
Wilmington, DE 19801
(302) 778-2500
radonnelly@ratnerprestia.com
akoopman@ratnerprestia.com
cblaszkowski@ratnerprestia.com

*Attorneys for Equinox Payments, LLC*

OF COUNSEL:

M. Elizabeth Day
Sal Lim
Marc C. Belloli
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA  94025
(650) 618-4360

ASHBY & GEDDES

/s/ Steven J. Balick
_____
Steven J. Balick (#2114)
John G. Day (#2403)
Tiffany G. Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Federal Express Corporation*

OF COUNSEL:

Jeffrey A. Berkowitz, Esquire
John S. Sieman, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675
(571) 203-2700

John M. Williamson, Esquire
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Stephen Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
skraftschik@mnat.com

*Attorneys for Hypercom Corporation and
Verifone Systems, Inc.*

OF COUNSEL:

Owen W. Dukelow
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street
200 Pacific Building
Portland, Oregon  97204
(503) 224-6655

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Stephen Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
skraftschik@mnat.com

*Attorneys for Ingenico Corp., Ingenico Inc. and
United Parcel Service, Inc.*

OF COUNSEL:

John Fry
Kelly L. Whitehart
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326, USA
(404) 233-7000

POTTER ANDERSON & CORROON LLP

*/s/ David E. Moore*

_____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
Wilmington, DE  198999
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Nintendo of America Inc.*

OF COUNSEL:

Timothy S. Teter
Benjamin G. Damstedt
Jeff Walker
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
(650) 843-5000